IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

LUCIA GOTT,

    Plaintiff,

    v.

TOWN OF CHESAPEAKE BEACH, MD.,

    Defendant.

CIVIL NO.: WDQ-12-03387

\* \* \* \* \* \* \* \* \* \* \* \* \*

MEMORANDUM OPINION

Lucia Gott sued the Town of Chesapeake Beach, Maryland ("Chesapeake") for violation of the Age Discrimination in Employment Act of 1967 as amended ("ADEA")[1] and Maryland State Government Code Ann. § 20-606(a). Pending is Chesapeake's motion for summary judgment. No hearing is necessary. *See* Local Rule 105.6 (D. Md. 2011). For the following reasons, the motion will be denied.

---

[1] 29 U.S.C. §§ 621, *et seq*.

I.  Background[2]

Lucia Gott was born in 1939. ECF No. 15-1 at 3. In 1995, Gott began working at the Chesapeake Beach Water Park's snack bar as a seasonal employee. *See* ECF Nos. 15-1 at 3; 19 at 2. From 1995 to 2009, Michelle Jenkins, Chesapeake's Town Administrator was Gott's supervisor. ECF No. 19 at 2. During Jenkins's tenure, Gott was always rehired for the following season and received a raise each year. ECF No. 19 at 2. For the 2009 season, Jenkins promoted Gott to snack bar manager. ECF No. 15-1 at 3. Jenkins never provided any of the snack bar employees with a written performance evaluation. ECF No. 15-1 at 3.

Jenkins's employment ended in 2009 and Dr. James Parent became the new Town Administrator. ECF No. 15-1 at 4. In February 2010, Chesapeake hired Marilyn VanWagner as the General Manager of the Water Park. *Id*. Gott remained as manager of the snack bar. *Id*. During Gott's two seasons as snack bar manager, she was asked to "go to a senior citizen facility and try to recruit new employees and put a sign that [the Water Park] was hiring." *See* ECF 15-1 at 6.

---

[2] The facts are taken from the defendant's motion, ECF No. 15-1, Gott's opposition, ECF No. 19, the defendant's reply, ECF No. 22, and their supporting exhibits. In reviewing a motion for summary judgment, the nonmovant's evidence "is to be believed, and all justifiable inferences are to be drawn in [her] favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

During the 2010 season, VanWagner experienced "a number of performance related issues" with Gott. ECF No. 15-7 ¶ 2. First, VanWagner approached Gott about changing the snack bar menus. ECF No. 19 at 2-3. Gott felt that a new menu was unnecessary because "during her employment [Gott] had increased snack bar sales from $300 per day to $2,200 per day."[3] ECF No. 19 at 3. Without speaking to VanWagner, Gott discussed the menu changes with Dr. Parent, and Dr. Parent informed Gott that the way she "ran [the snack bar] was fine." See ECF Nos. 15-1 at 5; 19 at 3.

Later in 2010, Chesapeake began remodeling the snack bar for the 2011 season and hired a consultant, Profitable Foods, Inc., "to evaluate the snack bar, to make recommendations, and to hire and train managers for the snack bar." ECF No. 15-1 at 4. The consultant also recommended changes to the snack bar menu, and Gott prepared to implement those changes. See ECF No. 19 at 3.

Gott also hired her grandson for the 2010 season. ECF No. 19 at 2. At the time, Gott was unaware of her grandson's criminal background. See id. Dr. Parent discovered that Gott's grandson had been accused of theft from Walmart. ECF No. 15-1

---

[3] These amounts are from Gott's deposition, but the basis and timing of these changes is unclear. See ECF No. 19 at 3.

3

at 4. Dr. Parent asked Gott to fire her grandson; she did. *See* ECF Nos. 15-4 at 4; 19 at 2.

Dr. Parent also approached Gott when it was discovered that $200 was missing from the snack bar. ECF No. 15-1 at 5. Gott fired the two employees who were responsible for the theft and offered to repay the $200 from her own pocket. ECF No. 19 at 3. Dr. Parent determined that there was no need for Gott to pay the $200, but a new process was required for handling money at the snack bar. *See* ECF Nos. 15-1 at 5-6; 19 at 3.

During the 2010 season, Gott's sister, Florence Higgins, was working at the snack bar as the Assistant Manager. ECF No. 15-1 at 5. Higgins discovered that lifeguards "were keeping things in the [snack bar's] freezer, leaving the door to the freezer open, and locking each other inside the freezer." ECF No. 19 at 8. In response, Higgins locked the lifeguards out of the rest area that included the snack bar. *Id.* VanWagner received complaints about the lifeguards being locked out. *See* ECF No. 15-7 at 1. Gott was not present during the incident. ECF No. 19 at 8.

At the end of the 2010 season, Dr. Parent received a complaint from the mother of a snack bar employee. *See* ECF No. 15-1 at 4-5. The mother was upset because her daughter had not received a portion of the tips from a tip jar at the snack bar. ECF No. 15-1 at 5. Dr. Parent and VanWagner discussed the issue

with Gott. Id. Gott said that during the 15 years that she had worked at the snack bar, tips were only split among employees who worked the entire summer season. See ECF No. 19 at 2. This was determined by which employees worked the last week of the season. See ECF No. 15-7 at 2. However, Gott determined which employees worked that week. Id.

In March 2011, VanWagner requested a meeting with Gott at the Town Hall to discuss her employment for the 2011 season. ECF No. 19 at 3. During the meeting, VanWagner informed Gott that she would not be rehired. Id. VanWagner said that it was "nothing personal," but they were "just looking for younger people" based on the advice of the consultants. ECF No. 19 at 3-4. Gott asked if her sister would be rehired and VanWagner answered, "She's older than you." ECF No. 19 at 4.[4] VanWagner subsequently hired Francis McClintock (47 years old) and Christopher Reese (18 years old) as Manager and Assistant Manager, respectively. ECF No. 15-1 at 9.

After the March 2011 meeting, Gott and Higgins met with Chesapeake's mayor, Bruce Wahl, to discuss the termination of Gott's employment. ECF No. 19 at 4. Wahl informed Gott and

---

[4] Chesapeake does not dispute that the meeting with Gott in March 2011 occurred. ECF No. 15-1 at 9-10. Chesapeake claims that VanWagner never made the comments regarding Gott's or her sister's age and that Gott was not rehired because her attitude and the 2010 incidents eliminated Gott as a trustworthy manager of the new snack bar. See ECF No. 15-7 at 3-4.

Higgins that he had spoken with VanWagner and "confirmed she had told [Gott] they needed younger people." *Id.* Wahl explained that VanWagner used "a poor choice of words." *Id.*

On November 29, 2011, Gott filed a discrimination claim with the EEOC and the Maryland Commission on Civil Rights. ECF No. 7 at 2. On May 16, 2012, the EEOC sent a perfected charge to Chesapeake. *Id.* On November 19, 2012, Gott sued Chesapeake for violation of ADEA and Maryland State Government Code Ann. § 20-606(a). ECF No. 1. On September 18, 2013, Chesapeake filed this motion for summary judgment. ECF No. 15. On October 14, 2013, Gott responded. ECF No. 19. On November 12, 2013, Chesapeake replied. ECF No. 22.

II. Analysis

   A. Legal Standard

      1. Summary Judgment

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[5] In considering the motion, the judge's function is "not . . . to weigh the evidence and determine the truth of

---

[5] Rule 56(a), which "carries forward the summary-judgment standard expressed in former subdivision (c)," changed "genuine 'issue' [to] genuine 'dispute,'" and restored the word "'shall' . . . to express the direction to grant summary judgment." Fed. R. Civ. P. 56 advisory committee's note.

the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

The Court must "view the evidence in the light most favorable to . . . the nonmovant and draw all reasonable inferences in [her] favor," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002), but the Court must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial," *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (citation and internal quotation marks omitted).

B. State Discrimination Claim

Chesapeake seeks summary judgment on Count II of the Complaint on the ground that Gott failed to provide notice as required by the Local Government Tort Claims Act ("LGTCA").[6] ECF No. 15-1 at 25. In responding to Chesapeake's motion for summary judgment, Gott stated that she would "only be proceeding

---

[6] Md. Code. Ann., Cts. & Jud. Proc., § 5-304 (2006 & Supp. 2011).

on Count I [of the Complaint] under ADEA,"[7] which Chesapeake treated as a voluntary dismissal of Count II.[8]

Under Rule 41(a)(1)(A)(i), "a plaintiff may dismiss an action without a court order by filing ... a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment[.]" Fed.R.Civ.P. 41(a)(1)(A)(i). Because Chesapeake has filed a motion for summary judgment, Gott may dismiss only by court order, "on terms that the court considers proper." See Fed.R.Civ.P. 41(a)(2). Because only a limited amount of discovery has occurred, and there does not appear to be any prejudice to Chesapeake, Gott's motion to dismiss Count II will be granted.

This voluntary dismissal moots Chesapeake's motion for summary judgment. See Bose v. Jews, No. WDQ-09-3400, 2010 WL 2427435, at *1 (D. Md. June 11, 2010). Accordingly, Chesapeake's motion for summary judgment on Count II will be denied as moot.

C. ADEA claim

Under the ADEA it is "unlawful for an employer . . . to discharge any individual or otherwise discriminate against [her] with respect to [her] compensation, terms, conditions or privileges of employment because of [her] age." 29 U.S.C. §

---

[7] ECF No. 19 at 5.

[8] ECF No. 22 at 2.

623(a). To succeed on an ADEA claim, the plaintiff must be at least 40 years old and "'prove, by a preponderance of the evidence . . . that age was the 'but-for' cause of the challenged employer decision.'"[9]

A plaintiff can prove her employer's discrimination through one of two methods. *See Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 284 (4th Cir. 2004). First, she may use "any direct or indirect evidence relevant to and sufficiently probative of the issue," under "ordinary principles of proof." *Burns v. AAF-McQuay, Inc.*, 96 F.3d 728, 731 (4th Cir. 1996) (internal quotation marks omitted). To avoid summary judgment, the plaintiff must produce "direct evidence of a stated purpose to discriminate and/or [indirect] evidence of sufficient probative force to reflect a genuine issue of material fact." *Rhoads v. FDIC*, 257 F.3d 373, 391 (4th Cir. 2001) (alteration in original) (internal quotation marks omitted). Absent direct evidence of discrimination, the Court applies the burden-shifting approach of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[10]

---

[9] 29 U.S.C. § 631(a); *Bodkin v. Town of Strasburg*, 386 F. App'x 411, 413 (4th Cir. 2010) (per curiam) (quoting *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177-78 (2009)).

[10] Under *McDonnell Douglas*, the plaintiff must first establish a prima facie case of discrimination. *Merritt v. Old Dominion Freight Line, Inc.*, 601 F.3d 289, 294 (4th Cir. 2010). The plaintiff must establish that: (1) she was protected by the

Chesapeake argues that it is entitled to summary judgment on Gott's ADEA claim because she has failed to show a *prima facie* discrimination case under the *McDonnell Douglas* framework. ECF No. 15-1 at 17-19. Gott contends that she produced direct evidence of age discrimination, and does not need to proceed under *McDonnell Douglas*. ECF No. 19 at 5.

a. Direct Evidence

To survive summary judgment, Gott must show "direct evidence of a stated purpose to discriminate and/or [indirect] evidence of sufficient probative force to reflect a genuine issue of material fact." *Id.* (quoting *Goldberg v. B. Green & Co.*, 836 F.2d 845, 848 (4th Cir.1988)) (alterations in

---

ADEA; (2) "[s]he suffered an adverse employment action"; (3) "[s]he was at the relevant time performing [her] duties at a level that met [her] employer's legitimate expectations"; and (4) "[her] position remained open or was filled by a similarly qualified applicant outside the protected class." *Loveless v. John's Ford, Inc.*, 232 F. App'x 229, 234-35 (4th Cir. 2007) (*per curiam*) (*citing Hill*, 354 F.3d at 285). If she does, "a presumption of illegal discrimination" arises, and the burden of production shifts to the employer to articulate a nondiscriminatory reason for its adverse decision. *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 336 (4th Cir. 2011). "If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted," *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255 (1981), and the *McDonnell Douglas* framework "drops out of the picture." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993). The plaintiff must then prove by a preponderance of the evidence that "the proffered reason was not the true reason for the employment decision," and that the true reason was discrimination. *Burdine*, 450 U.S. at 256. She may do this directly or indirectly, by "persuading the court that a discriminatory reason more likely motivated the employer" or by showing that the employer's explanation is "unworthy of credence." *Id.*

10

original). Direct evidence is "evidence of conduct or statements that both reflect directly on the alleged discriminatory attitude and that bear directly on the contested employment decision." *Johnson v. Mechs. & Farmers Bank*, 309 Fed. App'x 675, 681 (4th Cir. 2009) (quoting *Taylor v. Va. Union Univ.*, 193 F.3d 219, 232 (4th Cir. 1999) (en banc)). Additionally, a plaintiff must show a nexus between the discriminatory statements and the employment action. *See Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 314 F.3d 657, 665 (4th Cir.2003).

Gott argues that VanWagner's statements during the March 2011 meeting are direct evidence of discrimination. *See* ECF No. 19 at 5-6. During the meeting, VanWagner stated that not hiring Gott for the 2011 season was "nothing personal," the Water Park was "just looking for younger people," and that she was not going to rehire Gott's sister because the sister was older than Gott. *See id.* Chesapeake asserts that even if the Court were to assume that these statements occurred, Gott has still failed to meet her burden to present direct evidence of discrimination because these statements do not constitute direct evidence and cannot establish age discrimination as the but-for cause for the rehiring decision. *See* ECF No. 22 at 8.

11

Courts have consistently held that remarks about age that are not directly connected with the decision-making process do not reflect discriminatory intent sufficient to sustain an ADEA claim.[11]  However, when the statement alleged by a plaintiff is the defendant's explanation for the employment decision and is contemporaneous with the decision, the plaintiff has satisfied her burden to produce direct evidence.[12]

The discriminatory statements alleged by Gott were made during the March 2011 meeting in which VanWagner explained the *reasoning* for not rehiring Gott.  These are not remote

---

[11] *See Birkbeck v. Marvel Lighting Corp.*, 30 F.3d 507, 512 (4th Cir. 1994) (manager's statements that "there comes a time when we have to make way for younger people," which occurred two years before the alleged discriminatory action was a statement about life rather than a statement of discrimination); *EEOC v. Clay Printing Co.*, 955 F.2d 926, 939, 941 (4th Cir. 1992) (comments about the company needing "young blood" did not satisfy the plaintiffs' burden because they were not directly related to the firing decisions at issue and each claimant "testified that he [] had not heard any statement to indicate that his [] discharge was based on age"); *Merrick v. Farmers Ins. Grp.*, 892 F.2d 1434, 1438 (9th Cir. 1990) (stray remarks unconnected to the employment decision did not show discriminatory intent); *Lerner v. Shinseki*, No. ELH-10-1109, 2011 WL 2414967, at *18 (D. Md. June 10, 2011) (plaintiff's allegations regarding defendant's comments that plaintiff was "too old to change" and "it was a mistake" to allow plaintiff into the program did not constitute direct evidence of discrimination because they were "not directly connected to the decision to fire").

[12] *See Bass v. City of Wilson*, 155 F.R.D. 130, 134 (E.D.N.C. 1994) ("[A] statement made by [the employer] to Plaintiff on the telephone – that Plaintiff did not get the job because [employer] had a chance to hire a 'boy from Fuquay-Varina who was a lot younger' – constitutes direct evidence of age discrimination.").

statements unrelated to the hiring decision. *See, e.g., Birkbeck*, 30 F.3d at 512. There is a sufficient nexus between the discriminatory employment practice and the discriminatory statements. *See Bass*, 155 F.R.D. at 134. Based on the statements, a jury could conclude that VanWagner and others used age as the reason not to hire Gott.

Because Gott has direct evidence of discrimination she "may prevail without proving all the elements of a prima facie case."[13] Gott need not rebut Chesapeake's assertion that the rehiring decision was based on the incidents during the 2010 season.[14] Chesapeake's motion for summary judgment on Count I will be denied.

---

[13] *Swierkiewicz v. Sorema*, 534 U.S. 506, 511 (2002).

[14] Chesapeake devotes most of its motion for summary judgment and reply to arguing that Gott failed to fulfill the *McDonnell Douglas* requirements. *See* ECF Nos. 15-1 at 17-25; 22 at 2-10. Because the Court finds direct evidence of discrimination, it need not address these arguments. *See Johnson v. Rite Aid Corp.*, No. WDQ-12-0413, 2013 WL 657637, at *2 (D. Md. Feb. 21, 2013) (discussing the proof standards in ADEA cases).

III. Conclusion

For the reasons stated above, Chesapeake's motion for summary judgment will be denied, and Gott's motion to voluntarily dismiss Count II of the Complaint will be granted.

8/26/14
Date

William D. Quarles, Jr.
United States District Judge